SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court and may not summarize all portions of the opinion.

### Nancy L. Holm v. Daniel M. Purdy (A-39-21) (086229)

**Argued September 12, 2022 -- Decided December 13, 2022**

**PATTERSON, J., writing for the Court.**

In this appeal, the Court considers whether defendant Daniel Purdy, an insurance broker, had a duty under N.J.S.A. 34:15-36 to inform the members of Holmdel Nurseries, LLC that an LLC member actively performing services on the LLC's behalf is eligible for workers' compensation coverage, but that the LLC must elect to purchase such coverage in order to obtain it. The Court also considers the standard for finding a breach of any such duty, as well as the evidence presented to support proximate cause in this case.

Robert Friedauer and his brother, Walter Friedauer, owned Holmdel Nurseries and formed an LLC in which they each owned a fifty percent interest. Robert Friedauer's sons, Michael and Christopher Friedauer, were full-time employees.

Defendant became the insurance broker for Holmdel Nurseries in 2002; he also served as the personal insurance broker for each of the four Friedauers. For approximately a year after workers' compensation coverage became available to LLC members in New Jersey, Holmdel Nurseries elected to obtain that coverage for Robert and Walter Friedauer. After determining that the coverage was not cost-effective for himself or Walter, Robert Friedauer informed defendant of the LLC members' decision not to purchase workers' compensation coverage for themselves. From 2002 to 2012, Holmdel Nurseries' workers' compensation policies provided no coverage to the LLC members, in accordance with those instructions. As employees, however, Christopher and Michael Friedauer were covered by Holmdel Nurseries' workers' compensation policy during that period.

Michael Friedauer and Christopher Friedauer eventually purchased Walter's fifty percent interest in Holmdel Nurseries. As of January 1, 2012, they were no longer employees of the business, but rather members of the LLC, each owning a twenty-five percent share.

On July 12, 2012, defendant held his annual meeting with Holmdel Nurseries management to discuss the LLC's insurance needs. He learned at the meeting that

1

Walter Friedauer was no longer involved in the business and that Christopher Friedauer and Michael Friedauer had become members of the LLC. Defendant did not tell Christopher Friedauer or Michael Friedauer that because they were LLC members rather than employees, they were no longer covered by Holmdel Nurseries' workers' compensation insurance, or that the LLC could elect to purchase workers' compensation insurance that would cover them in case of a work-related accident.

Robert Friedauer testified that following the meeting, he had "no reason to believe" that his sons were not covered by Holmdel Nurseries' workers' compensation policy. According to defendant, all three LLC members knew that they were excluded from workers' compensation coverage and were satisfied. Like Holmdel Nurseries' workers' compensation policies for the period between 2002 and 2012, the policies that defendant secured for the LLC for 2013, 2014, and 2015 excluded the LLC members from workers' compensation coverage.

On the morning of February 15, 2015, Christopher Friedauer was at work at Holmdel Nurseries preparing trucks for snowplowing. Michael Friedauer testified that he encountered Christopher, who told Michael that while he was trying to get his truck running, he had slipped and fallen on his head, hitting his head "so hard I saw stars." Later that day, Michael Friedauer did not see his brother at Holmdel Nurseries, and searched for him at another location where employees were snowplowing. He testified that he found Christopher Friedauer "dead in a truck."

Shortly after Christopher Friedauer's death, defendant filed a workers' compensation claim for death benefits on behalf of Christopher's dependents, plaintiff and her two minor children. He testified that he had no reason to expect that Holmdel Nurseries' workers' compensation policy covered the dependents' claim because the LLC members had not opted for coverage.

Plaintiff Nancy L. Holm, administratrix of the estate of her husband, Christopher Friedauer, brought this action against defendant, alleging that he failed to provide to the LLC the notice mandated by N.J.S.A. 34:15-36 and that Christopher was unaware that he no longer had workers' compensation coverage in his new role as an LLC member. She alleges that as a result of defendant's negligence and breach of fiduciary duty, Christopher Friedauer's dependents were deprived of a workers' compensation death benefit to which they would have been entitled had he been covered at the time of his death.

The trial court rejected plaintiff's argument that an LLC's insurance broker has a duty to inform individual LLC members of their right to elect workers' compensation coverage and also found that plaintiff had not presented adequate evidence as to proximate cause. The court accordingly granted defendant's motion for an involuntary dismissal and defendant's motion for judgment at trial.

2

The Appellate Division reversed, holding that N.J.S.A. 34:15-36 imposes on an insurance broker a non-waivable duty to advise new members of an LLC that workers' compensation coverage is available to them if all LLC members elect to obtain such coverage. The Appellate Division did not require plaintiff to prove that defendant committed "a willful, wanton or grossly negligent act of commission or omission" in order to recover damages, as N.J.S.A. 34:15-36 prescribes. Instead, the appellate court concluded that plaintiff presented sufficient evidence to warrant a jury determination whether defendant breached a duty to inform Christopher Friedauer and whether Christopher Friedauer's death was compensable.

The Court granted certification. 250 N.J. 14 (2022).

**HELD:** Informed by the Legislature's expression of public policy in N.J.S.A. 34:15-36, the Court concurs with the Appellate Division that defendant had a duty to advise the LLC members, at the time of the workers' compensation policy's purchase or renewal, that an LLC member actively performing services on the LLC's behalf is eligible for workers' compensation coverage, but that the LLC must elect to purchase such coverage in order to obtain it. Consistent with N.J.S.A. 34:15-36, however, the Court holds that defendant may not be held liable for breach of that duty unless the damages alleged were caused by defendant's willful, wanton or grossly negligent act of commission or omission. The Court disagrees with the trial court's assessment of the evidence presented by plaintiff on the question of proximate cause.

1. N.J.S.A. 34:15-36 provides that a member of an LLC who actively performs services on behalf of the LLC shall be deemed an employee of the LLC for purposes of receipt of benefits and payment of premiums under the Workers' Compensation Act if the LLC elects, when it purchases or renews its workers' compensation policy, to obtain coverage for the LLC members. The Legislature imposed notice obligations on insurers and insurance producers, including brokers. N.J.S.A. 34:15-36 mandates that every application for workers' compensation include "notice, as approved by the Commissioner of Banking and Insurance, concerning the availability of workers' compensation coverage" for limited liability company members. The law further requires that the application contain a notice of election of coverage and clearly state that coverage for LLC members "shall not be provided under the policy unless the application containing the notice of election is executed and filed with the insurer or insurance producer." Ibid. N.J.S.A. 34:15-36, however, does not create a statutory remedy for a violation of its provision. Indeed, it limits the liability of insurers and insurance producers in the event of a common-law claim, providing that they shall not be liable for an LLC's failure to obtain workers' compensation coverage for its members "unless the insurer or insurance producer causes damage by a willful, wanton or grossly negligent act of commission or omission." Ibid. (pp. 18-20)

3

2.  To determine whether a duty of care should be imposed in a given context, a court must first consider the foreseeability of harm to a potential plaintiff and then analyze whether accepted fairness and policy considerations support the imposition of a duty by weighing the (1) relationship of the parties, (2) nature of the risk, (3) opportunity and ability to exercise care, and (4) public interest.  See Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 439 (1993).  In certain settings, determination whether to impose a duty may be informed by a statute, even when the statute creates no civil cause of action for a violation.  Ultimately, courts strive for solutions that properly and fairly resolve the specific case and generate intelligible and sensible rules to govern future conduct.  (pp. 21-23)

3.  The Court reviews duties that insurance brokers owe as fiduciaries to their clients and notes that its jurisprudence constrains the fiduciary duty of an insurance broker to the categories of insurance coverage that the broker undertakes to obtain for the insured, or the coverage necessitated by a particular peril known to the broker -- the Court has not imposed a general duty on brokers to advise an insured about the myriad varieties of insurance available on the market.  In the unusual setting in which a broker is held to have a duty to a third party, that duty is premised on the broker's obligation to provide the insured with a type of coverage that the insured has requested, as well as considerations of foreseeability and fairness.  (pp. 23-27)

4.  Here, it was foreseeable that if defendant did not inform Holmdel Nurseries' LLC members that the LLC could obtain workers' compensation coverage for Christopher Friedauer, his dependents could be harmed in the event that Christopher were to die in a work-related accident without such coverage.  The threshold inquiry is thus satisfied.  Turning to fairness and policy considerations, the Court explains in detail why each of the four Hopkins factors favors the recognition of a duty here.  In accordance with N.J.S.A. 34:15-36, the Court holds that an insurance broker for an LLC, charged by the LLC to obtain workers' compensation coverage on its behalf, has a non-waivable duty to provide notice that such coverage is available to LLC members who actively perform services on behalf of the LLC -- but that such coverage is available only if the LLC elects the coverage when the policy is purchased or renewed.  Because it is foreseeable that the failure to provide such notice may harm an LLC member or the member's dependents, the broker's duty may extend not only to the LLC, but also to LLC members eligible for workers' compensation coverage under N.J.S.A. 34:15-36.  In the circumstances here, in which the LLC had only three members -- all working at Holmdel Nurseries and all in contact with defendant during the relevant period -- defendant had a duty to provide notice directly to the members.  The Court does not address whether an insurance broker must provide direct notice to all LLC members eligible for workers' compensation coverage in cases involving LLCs with numerous members.  Because the trial court based its judgment mainly on its finding that defendant owed no duty to the LLC members, it erred in granting defendant's motions.  (pp. 27-32)

4

5.  N.J.S.A. 34:15-36 precludes imposition of liability on an insurance broker absent proof of "a willful, wanton or grossly negligent act of commission or omission." That standard should govern any common-law claim based on a failure to provide the notice mandated by the statute.  In this case, and in other cases premised on an alleged breach of an insurance broker's duty to provide notice of the availability of workers' compensation insurance for LLC members, a plaintiff must prove that the damage was caused by a willful, wanton, or grossly negligent act of commission or omission by the broker.  Ibid.  (pp. 32-33)

6.  The Court next addresses the trial court's ruling on the question of proximate cause.  First, accepting the testimony of Robert and Michael Friedauer as true for purposes of the motion and according to that evidence all reasonable inferences, a rational juror could conclude that all three LLC members -- all part of the same family -- wanted to maximize insurance coverage for Christopher Friedauer, a parent of young children whose work for Holmdel Nurseries was sometimes dangerous.  Although the jury may have been persuaded by defendant's testimony that the LLC would have opted against such coverage given its longstanding decision to decline it, the Court cannot conclude that no rational juror would decide in plaintiff's favor on that issue.  Second, in order to award a death benefit to Christopher Friedauer's dependents, a workers' compensation court would have to find that his death resulted from an "accident arising out of and in the course of his employment." N.J.S.A. 34:15-1.  In the procedural posture of this appeal, in which there was no workers' compensation proceeding, the Court expresses no view as to what evidence a workers' compensation judge would have required in order to make that finding but explains why it disagrees with the trial court's conclusion that plaintiff presented no evidence that Christopher Friedauer died in a work-related accident and that it therefore did not need to reach the question of proximate cause.  The trial court should have reached whether plaintiff's proofs on the question of proximate cause concerning Christopher Friedauer's injury were sufficient to warrant denial of defendant's motions for involuntary dismissal and for judgment at trial.  (pp. 33-37)

7.  Because it recognized no duty on the part of an insurance broker to an LLC member to provide notice of the availability of workers' compensation coverage, the trial court did not consider whether the evidence supported a finding that defendant "cause[d] damage by a willful, wanton or grossly negligent act of commission or omission" under N.J.S.A. 34:15-36.  The Court remands to the trial court for that determination and provides guidance for the remand proceedings.  (p. 37)

**AFFIRMED AS MODIFIED and REMANDED to the trial court.**

**CHIEF JUSTICE RABNER; JUSTICES SOLOMON, PIERRE-LOUIS and FASCIALE; and JUDGE SABATINO (temporarily assigned) join in JUSTICE PATTERSON's opinion.**

5

Nancy L. Holm,
individually and as
Administratrix of the Estate
of Christopher R. Friedauer, deceased,

Plaintiff-Respondent,

v.

Daniel M. Purdy,

Defendant-Appellant.

On certification to the Superior Court,
Appellate Division.

| Argued | Decided |
|--------|---------|
| September 12, 2022 | December 13, 2022 |

Michael J. Dunn argued the cause for appellant (Law Offices of Michael J. Dunn, attorneys; Michael J. Dunn, on the brief).

Ryan Milun argued the cause for respondent (The Milun Law Firm, attorneys; Ryan Milun, on the brief).

JUSTICE PATTERSON delivered the opinion of the Court.

The New Jersey Workers' Compensation Act provides that the members

of a limited liability company (LLC) who actively perform services on behalf

1

of the LLC are eligible for workers' compensation coverage if the LLC elects to obtain that coverage for its members. N.J.S.A. 34:15-36. The Act mandates that every application for workers' compensation insurance include a notice of the availability of workers' compensation coverage for LLC members and a form by which an LLC may elect such coverage. Ibid. However, the statute precludes the imposition of liability on an insurance broker based on the LLC's failure to obtain such workers' compensation coverage for an LLC member unless the insurance broker "causes damage by a willful, wanton or grossly negligent act of commission or omission." Ibid.

This action was brought by plaintiff Nancy L. Holm, administratrix of the estate of her husband, Christopher Friedauer, who died in 2015 after falling at his workplace, Holmdel Nurseries, LLC. As a longtime employee of the family-owned business, Christopher had been covered by workers' compensation insurance, but he was no longer covered after he became a member of the LLC in 2012.

Plaintiff claims that defendant Daniel M. Purdy, who served as the insurance broker for Holmdel Nurseries from 2002 to 2015, failed to provide to the LLC the notice mandated by N.J.S.A. 34:15-36, and that Christopher was unaware that he no longer had workers' compensation coverage in his new role as an LLC member. She alleges that as a result of defendant's negligence

2

and breach of fiduciary duty, Christopher Friedauer's dependents were deprived of a workers' compensation death benefit to which they would have been entitled under N.J.S.A. 34:15-13 had he been covered by workers' compensation insurance at the time of his death.

Defendant asserts that Christopher Friedauer's father, Robert Friedauer, the LLC's managing member for insurance issues, instructed defendant in 2002 that Holmdel Nurseries did not want to purchase workers' compensation coverage for its LLC members because of the cost of that coverage. He claims that the LLC would have maintained that position even if he had advised the LLC members of their right to obtain such coverage when Christopher Friedauer became an LLC member.

At the close of a jury trial, the trial court granted defendant's motion for an involuntary dismissal pursuant to Rule 4:37-2(b) and his motion for judgment at trial pursuant to Rule 4:40-1. The court ruled that in light of Holmdel Nurseries' previous decision not to purchase workers' compensation insurance coverage for its LLC members, defendant had no duty to inform the LLC members in 2012 that such coverage was available to its new members if the LLC opted to pay a higher premium for that coverage. The trial court further found that plaintiff failed to present evidence that a breach of duty by defendant was the proximate cause of the damages alleged.

3

Plaintiff appealed the trial court's judgment. The Appellate Division affirmed in part and reversed in part and remanded the case for a new trial. The appellate court held that N.J.S.A. 34:15-36 imposes a non-waivable duty on insurance brokers to inform new LLC members of the availability of workers' compensation coverage and the right to elect such coverage. The court found that plaintiff had presented sufficient evidence on the issue of proximate cause to warrant denial of defendant's motion to dismiss and his motion for judgment at trial.

We granted defendant's petition for certification. Informed by the Legislature's expression of public policy in N.J.S.A. 34:15-36, we concur with the Appellate Division that defendant had a duty to advise the LLC members, at the time of the workers' compensation policy's purchase or renewal, that an LLC member actively performing services on the LLC's behalf is eligible for workers' compensation coverage, but that the LLC must elect to purchase such coverage in order to obtain it. Consistent with N.J.S.A. 34:15-36, however, we hold that defendant may not be held liable for breach of that duty unless the damages alleged were caused by defendant's willful, wanton or grossly negligent act of commission or omission. We disagree with the trial court's assessment of the evidence presented by plaintiff on the question of proximate cause.

Accordingly, we concur that the trial court erred when it granted defendant's motion to dismiss and his motion for judgment at trial, and we affirm as modified the Appellate Division's judgment. We remand this matter to the trial court for further proceedings.

I.

A.

We summarize the facts based upon the record presented at trial.

1.

From 1978, Robert Friedauer and his brother, Walter Friedauer, owned Holmdel Nurseries, a business founded by their father that sold trees and other landscaping supplies. Robert and Walter Friedauer eventually formed an LLC in which they were members, each owning a fifty percent interest in the LLC. Robert Friedauer managed insurance issues for the LLC.

Beginning when they were teenagers, Robert Friedauer's sons, Michael Friedauer and Christopher Friedauer, worked part-time at Holmdel Nurseries. After graduating from college, they became full-time employees of the family business.

Defendant has decades of experience as an insurance broker specializing in commercial insurance for agriculture-related businesses. During the period

5

relevant to this case, he owned a captive agency for Farm Family Insurance Company.

Defendant became the insurance broker for Holmdel Nurseries in 2002. Thereafter, during annual in-person meetings and many telephone calls, defendant discussed with Robert Friedauer various types of coverage available to Holmdel Nurseries. Robert Friedauer instructed defendant to obtain for Holmdel Nurseries insurance policies covering the business's buildings, vehicles, equipment, and other property; a general liability policy; an umbrella policy; and a workers' compensation policy. The premium charged for Holmdel Nurseries' workers' compensation policy was based on the number of employees covered and the salaries paid to those employees, ascertained in annual audits conducted by the insurer. Because his compensation was based on commissions, defendant had a financial incentive to encourage Holmdel Nurseries to purchase workers' compensation insurance that provided coverage to more employees at a higher premium.

For approximately a year after workers' compensation coverage became available to LLC members in New Jersey under N.J.S.A. 34:15-36, Holmdel Nurseries elected to obtain that coverage for Robert and Walter Friedauer. Robert Friedauer testified that after he broke his wrist in a work-related accident, he determined that it was not cost-effective for Holmdel Nurseries to

6

maintain workers' compensation insurance for himself or Walter Friedauer, given the high cost of the coverage. Robert Friedauer testified that he and his brother "had an agreement, if one of us got hurt, we would take care of each other," and that he advised defendant of the LLC members' decision not to purchase workers' compensation coverage for themselves. Accordingly, defendant's initial proposal for Holmdel Nurseries' workers' compensation policy stated, "LLC members excluded."

Defendant testified that every policy renewal sent by Farm Family to Holmdel Nurseries included the form by which an LLC could elect workers' compensation coverage for its members. He stated that it was Farm Family's responsibility, not his agency's, to send the notice of election. Plaintiff denies that the LLC received the required notices of election.

Defendant also served as the personal insurance broker for Robert Friedauer and Walter Friedauer, and he discussed with each of them life insurance, disability insurance, homeowners' insurance, auto insurance, and other types of coverage available to them. According to defendant, although the life and disability policies he suggested offered a death benefit, Robert Friedauer declined to purchase such policies, commenting that "we're good."

Defendant also acted as the personal insurance broker for Michael and Christopher Friedauer. He testified that he secured for Christopher Friedauer

7

homeowners' insurance, automobile insurance, boat insurance, and an umbrella policy. He stated that he offered to obtain life insurance and disability insurance for Christopher Friedauer, but "he did not show any interest [in that insurance] to me."

It is undisputed that from 2002 to 2012, Holmdel Nurseries' workers' compensation policies provided no coverage to the LLC members, in accordance with Robert Friedauer's instructions to defendant. As employees, however, Christopher Friedauer and his brother Michael Friedauer were covered by Holmdel Nurseries' workers' compensation policy during that period.

2.

In April or May 2012, Michael Friedauer and Christopher Friedauer reached an agreement with Walter Friedauer to purchase Walter's fifty percent interest in Holmdel Nurseries. Michael, Christopher, and Walter Friedauer made their agreement retroactive to January 1, 2012. As of that date, Michael Friedauer and Christopher Friedauer were no longer employees of the business, but rather members of the LLC, each owning a twenty-five percent share.

On July 12, 2012, defendant held his annual meeting with Holmdel Nurseries management to discuss the LLC's insurance needs. The parties

agree that Robert Friedauer, Michael Friedauer, and defendant attended the meeting. Plaintiff maintains that Christopher Friedauer was also present; defendant initially testified that Christopher did not attend the meeting but later said that he was uncertain whether Christopher was present.

At the July 12, 2012 meeting, defendant learned for the first time that Walter Friedauer was no longer involved in the business and that Christopher Friedauer and Michael Friedauer had become members of the LLC. Defendant testified that the Friedauers' primary concerns at the meeting were the deletion of Walter Friedauer's name from Holmdel Nurseries' insurance policies and insurance coverage for newly acquired machinery. Michael Friedauer testified, however, that he gave defendant "as much information as possible to just make sure we were protected."

It is undisputed that during the July 12, 2012 meeting, defendant did not tell Christopher Friedauer or Michael Friedauer that because they were LLC members rather than employees, they were no longer covered by Holmdel Nurseries' workers' compensation insurance, or that the LLC could elect to purchase workers' compensation insurance that would cover them in case of a work-related accident. Robert Friedauer testified that following the July 12, 2012 meeting, he had "no reason to believe" that his sons were not covered by

9

Holmdel Nurseries' workers' compensation policy, and that he "never signed anything saying that they were in or out" of the LLC's coverage.

According to defendant, all three LLC members knew that they were excluded from workers' compensation coverage and were satisfied "because they were saving premium dollars." Like Holmdel Nurseries' workers' compensation policies for the period between 2002 and 2012, the policies that defendant secured for the LLC for 2013, 2014, and 2015 excluded the LLC members from workers' compensation coverage.

3.

On the morning of February 15, 2015, Christopher Friedauer was at work at Holmdel Nurseries preparing trucks for snowplowing. Michael Friedauer testified that he encountered Christopher, who was covered in snow, and observed that he "didn't look like himself" and was "completely out of it." According to Michael, Christopher told Michael that while he was trying to get his truck running, he had slipped and fallen on his head, hitting his head "so hard I saw stars."

Later that day, Michael Friedauer did not see his brother at Holmdel Nurseries, and searched for him at another location where employees were snowplowing. He testified that he found Christopher Friedauer "dead in a truck." Christopher was taken to a hospital, where he was pronounced dead.

4.

Shortly after Christopher Friedauer's death, defendant filed a workers' compensation claim for death benefits on behalf of Christopher's dependents, plaintiff and her two minor children. He testified that he had no reason to expect that Holmdel Nurseries' workers' compensation policy covered the dependents' claim because the LLC members had not opted for coverage.

Holmdel Nurseries subsequently informed defendant by letter that he was no longer its insurance broker, and Farm Family assigned another broker to handle the business's insurance needs. On the advice of its new broker, Holmdel Nurseries elected to provide workers' compensation insurance for its LLC members, but later decided to forego that insurance coverage in favor of disability policies for the LLC members.

B.

1.

Plaintiff filed this action in the Law Division. She asserted a claim for professional negligence, alleging that defendant breached a duty to act as an insurance broker of reasonable skill and diligence by "inexplicably fail[ing] to recommend or obtain basic insurance coverage for Friedauer, such as workers' compensation insurance, disability insurance or life insurance." She also asserted a claim for breach of fiduciary duty, alleging among other contentions

11

that defendant violated his duty to act in a manner consistent with Christopher's best interests by failing to confirm that he had workers' compensation, disability, and life insurance.

After the parties conducted discovery, defendant moved for summary judgment and plaintiff cross-moved for partial summary judgment. The trial court denied both summary judgment motions, and the case was tried before a jury.

At trial, plaintiff testified and presented the testimony of Robert Friedauer and Michael Friedauer. Robert and Michael testified that had they been aware of the availability of insurance coverage for LLC members, they would have opted to obtain such coverage. Plaintiff also presented the testimony of two expert witnesses. Plaintiff's expert on insurance brokerage practices opined that it was a "necessity for an insurance broker" to advise Christopher Friedauer that he would not have workers' compensation coverage unless Holmdel Nurseries opted to include its LLC members in its workers' compensation policy. The expert characterized defendant's failure to provide such advice as a "gross error." Plaintiff's damages expert opined that plaintiff suffered damages in the range of $570,272 to $858,099, representing the present value of the workers' compensation death benefit that would have been awarded to Christopher Friedauer's dependents, based on his past

12

compensation, had he been covered by Holmdel Nurseries' workers' compensation policy.

Plaintiff sought to introduce into evidence the report of the medical examiner who conducted Christopher Friedauer's autopsy as proof that decedent's death was work-related. The trial court excluded the report, noting that plaintiff offered no medical testimony on the cause of death or other medical evidence to establish that the dependents would have been entitled to a workers' compensation death benefit had Christopher Friedauer been covered by the LLC's policy.

At the conclusion of plaintiff's case, defendant moved for an involuntary dismissal under Rule 4:37-2(b), arguing that plaintiff had failed to present prima facie proof that he breached a duty to plaintiff. The trial court reserved on the motion.

Defendant testified on his own behalf. He also presented the testimony of an expert on insurance brokerage practices. The expert opined that defendant did not violate any duty to Holmdel Nurseries, given the LLC's decision not to pay for workers' compensation coverage for its members and the lack of evidence that any LLC member inquired whether such coverage was available to the new LLC members. At the close of the evidence, defendant moved for judgment at trial pursuant to Rule 4:40-1.

13

The trial court held that an insurance broker owes a duty to an LLC to inform it of the availability of workers' compensation coverage for its members and of its option to elect such coverage. The court noted, however, that the interests of the LLC and the interests of its members may not align. It rejected plaintiff's argument that an LLC's insurance broker has a duty to inform individual LLC members of their right to elect workers' compensation coverage. The trial court declined to recognize a special relationship between defendant and Christopher Friedauer that might give rise to a duty of care, noting that their limited discussions related only to Christopher's personal insurance coverage, not to Holmdel Nurseries' workers' compensation coverage.

Addressing the issue of proximate cause, the trial court found no evidence that Christopher Friedauer would have decided that the LLC should provide workers' compensation coverage to its members had he been aware that such compensation was available. The court ruled that there was no evidence that Robert and Michael Friedauer had the authority to bind the LLC to that election without Christopher's assent. Finding that there was not a scintilla of evidence in the record that Christopher Friedauer suffered a work-related injury, the court stated that it was not in a position to decide whether

14

Christopher's death would have been compensable had Holmdel Nurseries opted to cover its members for workers' compensation.

The trial court accordingly granted defendant's motion for an involuntary dismissal and defendant's motion for judgment at trial.

2.

Plaintiff appealed the trial court's judgment. The Appellate Division affirmed the trial court's denial of plaintiff's cross-motion for summary judgment. It reversed the trial court's grant of defendant's motion for involuntary dismissal pursuant to Rule 4:37-2(b) and motion for judgment at trial pursuant to Rule 4:40-1.

The Appellate Division held that N.J.S.A. 34:15-36 imposes on an insurance broker a non-waivable duty to advise new members of an LLC that workers' compensation coverage is available to them if all LLC members elect to obtain such coverage. The Appellate Division did not require plaintiff to prove that defendant committed "a willful, wanton or grossly negligent act of commission or omission" in order to recover damages, as N.J.S.A. 34:15-36 prescribes. Instead, the appellate court concluded that plaintiff presented sufficient evidence to warrant a jury determination whether defendant breached a duty to inform Christopher Friedauer that he could obtain workers' compensation coverage if all LLC members elected such coverage. The

15

Appellate Division further determined that plaintiff had presented sufficient circumstantial evidence that Christopher Friedauer's death was compensable to warrant a jury determination of that issue. It remanded the case to the trial court for a new trial.

We granted defendant's petition for certification. 250 N.J. 14 (2022).

II.

A.

Defendant contends that the Appellate Division contravened N.J.S.A. 34:15-36 when it (1) imposed on insurance brokers a duty to inform new LLC members, individually, that workers' compensation insurance is available to them and that they may elect such coverage and (2) applied an ordinary negligence standard instead of requiring plaintiff to prove a "willful, wanton or grossly negligent act of commission or omission" in accordance with the statute's terms. Defendant also argues that the appellate court wrongly concluded that plaintiff presented evidence on the question of proximate cause that warranted the denial of defendant's motion to dismiss and motion for judgment at trial.

B.

Plaintiff asserts that the Appellate Division properly recognized an insurance broker's duty to provide notice to LLC members that unless all

16

members opt to purchase workers' compensation insurance, they will not be covered by such insurance for a work-related injury or death. She urges that we leave undisturbed the Appellate Division's holding that her proof of causation was adequate and argues that, regardless of whether an ordinary negligence standard or a gross negligence standard governs this case, defendant breached his duty to Christopher Friedauer and should be held liable.

## III.

### A.

We review de novo the trial court's legal determination that defendant had a duty to Christopher Friedauer, affording no special deference to the appellate court's interpretation of the law and the legal consequences that flow from established facts. Jeter v. Sam's Club, 250 N.J. 240, 251 (2022); Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

We review the trial court's grant of defendant's motion for involuntary dismissal under Rule 4:37-2(b) and defendant's motion for judgment at trial pursuant to Rule 4:40-1 under the standard that governs a trial court determining both motions. Smith v. Millville Rescue Squad, 225 N.J. 373, 397 (2016). Under that test, "if, accepting as true all the evidence which supports

17

the position of the party defending against the motion and according him the benefit of all inferences which can reasonably and legitimately be deduced therefrom, reasonable minds could differ, the motion must be denied." Ibid. (quoting Verdicchio v. Ricca, 179 N.J. 1, 30 (2004)).

B.

The Workers' Compensation Act provides that "[w]hen personal injury is caused to an employee by accident arising out of and in the course of his employment, of which the actual or lawfully imputed negligence of the employer is the natural and proximate cause, he shall receive compensation therefor from his employer." N.J.S.A. 34:15-1.

N.J.S.A. 34:15-36, which defines the term "employee" for purposes of the Act, authorizes self-employed persons and certain categories of business owners to obtain workers' compensation coverage.[1] The statute provides that a

---

[1] Prior to a 1999 amendment, the Act "[did] not permit self-employed persons and general partners to receive workers' compensation benefits, which historically have been intended for employees rather than business owners." Sponsor's Statement to A. 1647 (L. 1999, c. 383). The Legislature passed a bill authorizing the payment of workers' compensation benefits to self-employed persons and partners, provided that the "business elects to obtain the coverage when the workers' compensation policy is purchased or renewed." A. Labor Comm. Statement to A. 1647 1 (Feb. 11, 1999). Governor Whitman conditionally vetoed the bill, recommending that it be expanded to "include limited liability companies and limited liability partnerships to eliminate any potential confusion as to whether these less traditionally structured corporate entities are eligible for coverage." Governor's Veto Statement to A. 1647 2

member of a limited liability company "who actively perform[s] services on behalf of the . . . limited liability company" shall be deemed "an 'employee' of the . . . limited liability company . . . for purposes of receipt of benefits and payment of premiums pursuant to this chapter," if the limited liability company "elects, when the workers' compensation policy of the . . . limited liability company . . . is purchased or renewed," to "obtain coverage for . . . the limited liability company members."[2] N.J.S.A. 34:15-36. Such "election may only be made at purchase or at renewal and may not be withdrawn during the policy term." Ibid.

The Legislature imposed notice obligations on an "insurer" and an "insurance producer," the latter term defined to include "a person required to be licensed under the laws of this State to sell, solicit or negotiate insurance." See N.J.S.A. 34:15-36; N.J.S.A. 17:22A-28. N.J.S.A. 34:15-36 mandates that every application for workers' compensation include "notice, as approved by the Commissioner of Banking and Insurance, concerning the availability of workers' compensation coverage" for limited liability company members. The

---

(1999). N.J.S.A. 34:15-36, as amended effective January 14, 2000, incorporated the Governor's recommendations.

[2] N.J.S.A. 34:15-36 similarly authorizes workers' compensation coverage for "[a] self-employed person, partners of a limited liability partnership, . . . or partners of a partnership who actively perform services on behalf of the . . . business, limited liability partnership, . . . or partnership."

law further requires that the application "contain a notice of election of coverage and shall clearly state that coverage for . . . limited liability company members . . . shall not be provided under the policy unless the application containing the notice of election is executed and filed with the insurer or insurance producer." Ibid.

N.J.S.A. 34:15-36, however, does not create a statutory remedy for a violation of its provision. Indeed, it limits the liability of insurers and insurance producers in the event of a common-law claim, providing that

> [n]otwithstanding any other provision of law to the contrary, no insurer or insurance producer . . . shall be liable in an action for damages on account of the failure of a . . . limited liability company . . . to elect to obtain workers' compensation coverage for a . . . limited liability company member . . . unless the insurer or insurance producer causes damage by a willful, wanton or grossly negligent act of commission or omission.
>
> [Ibid.]

The statute requires that the application containing the notice of election also include notice of that limitation on any potential common-law claim. Ibid.

## C.

### 1.

A familiar standard governs our determination whether to impose a duty on an insurance broker to inform an LLC member of the availability of workers' compensation insurance. "Whether a person owes a duty of

reasonable care toward another turns on whether the imposition of such a duty satisfies an abiding sense of basic fairness under all of the circumstances in light of considerations of public policy." Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 439 (1993). "Whether, in a given context, 'a duty to exercise reasonable care to avoid the risk of harm to another exists is [a question] of fairness and policy that implicates many factors.'" Coleman v. Martinez, 247 N.J. 319, 337 (2021) (alteration in original) (quoting Carvalho v. Toll Bros. & Devs., 143 N.J. 565, 572 (1996)).

The "court must first consider the foreseeability of harm to a potential plaintiff and then analyze whether accepted fairness and policy considerations support the imposition of a duty." Id. at 338 (quoting Jerkins v. Anderson, 191 N.J. 285, 294 (2007)). We weigh "the (1) relationship of the parties, (2) nature of the risk, (3) opportunity and ability to exercise care, and (4) public interest." Id. at 342; see also Hopkins, 132 N.J. at 439 (noting that the analysis "involves identifying, weighing, and balancing several factors -- the relationship of the parties, the nature of the attendant risk, the opportunity and ability to exercise care, and the public interest in the proposed solution").

In certain settings, our determination whether to impose a duty may be informed by a statute, even when the statute creates no civil cause of action for a violation. As we recently noted, among the factors that may be relevant in

21

the four-pronged inquiry to determine whether a duty should be imposed is whether "statutes protect against the harm ultimately realized." Coleman, 247 N.J. at 342 (citing J.S. v. R.T.H., 155 N.J. 330, 343-44 (1998)). That principle is illustrated by J.S., in which we considered "whether a wife who suspects or should suspect her husband of actual or prospective sexual abuse of their neighbors' children has any duty of care to prevent such abuse." 155 N.J. at 334. There, we invoked statutes imposing a duty to report the sexual abuse of children, id. at 343-47 (citing N.J.S.A. 9:6-8.10, N.J.S.A. 2A:61B-1a(1), and N.J.S.A. 2C:7-1 to -11), and noted that the Legislature did not exempt a suspect's spouse from the duty to report such abuse, id. at 347. We reasoned that,

> [w]hen a legislative provision protects a class of persons by proscribing or requiring certain conduct but does not provide a civil remedy for the violation, the court may, if it determines that the remedy is appropriate in furtherance of the purpose of the legislation and needed to assure the effectiveness of the provision, accord to an injured member of the class a right of action, using a suitable existing tort action or a new cause of action analogous to an existing tort action.
>
> [Id. at 348 (quoting Restatement (Second) of Torts § 874A (Am. Law Inst. (1965))).]

Citing "considerations of foreseeability, the comparative interests and relationships of the parties, and public policy and fairness," particularly "the strong public policy of protecting children from sexual abuse," we found "a

22

sound, indeed, compelling basis for the imposition of a duty on a wife whose husband poses the threat of sexually victimizing young children." Id. at 351.

As a general rule, we have "carefully refrained from treating questions of duty in a conclusory fashion, recognizing that whether a duty exists is ultimately a question of fairness." Luchejko v. City of Hoboken, 207 N.J. 191, 215 (2011) (alteration and internal quotation omitted) (quoting Weinberg v. Dinger, 106 N.J. 469, 485 (1987)). We strive for "solutions that properly and fairly resolve the specific case and generate intelligible and sensible rules to govern future conduct." Hopkins, 132 N.J. at 439.

### 2.

An insurance broker "must act in a fiduciary capacity to the client '[b]ecause of the increasing complexity of the insurance industry and the specialized knowledge required to understand all of its intricacies.'" Aden v. Fortsh, 169 N.J. 64, 78 (2001) (alteration in original) (quoting Walker v. Atl. Chrysler Plymouth, Inc., 216 N.J. Super. 255, 260 (App. Div. 1987)); see also N.J.A.C. 11:17A-4.10 ("An insurance producer acts in a fiduciary capacity in the conduct of his or her insurance business."); George J. Kenny & Frank A. Lattal, New Jersey Insurance Law § 10-1 at 311-12 (2022) (same).

"The fiduciary relationship gives rise to a duty owed by the broker to the client 'to exercise good faith and reasonable skill in advising insureds.'"

23

Aden, 169 N.J. at 79 (quoting Weinisch v. Sawyer, 123 N.J. 333, 340 (1991));

see also Carter Lincoln-Mercury, Inc. v. EMAR Grp., Inc., 135 N.J. 182, 188-89 (1994) ("The common law has long recognized that an insurance broker owes a duty to the insured to act with reasonable skill and diligence in performing the services of a broker.").

An insurance broker "is expected to possess reasonable knowledge of the types of policies, their different terms, and the coverage available in the area in which his principal seeks to be protected." Aden, 169 N.J. at 79 (quoting Rider v. Lynch, 42 N.J. 465, 476 (1964)). The broker's duties are to "(1) to procure the insurance; (2) to secure a policy that is neither void nor materially deficient; and (3) to provide the coverage he or she undertook to supply." President v. Jenkins, 180 N.J. 550, 569 (2004). "If an agent or broker fails to exercise the requisite skill and diligence when fulfilling those obligations, then there is a breach in the duty of care, and liability arises." Ibid.; accord Kenny & Lattal, § 10-8 at 316 ("If the broker neglects to procure the appropriate insurance coverage or if the policy obtained is void or materially deficient or does not provide the coverage the broker undertook to obtain, then the broker becomes liable to the principal for the resulting loss."). As we have observed, "insurance companies and brokers have a duty to advise insureds of their coverage needs where the insurer is aware of a particular peril." Sears

24

Mortgage Corp. v. Rose, 134 N.J. 326, 348 (1993). "The concept is essentially one of professional malpractice." Aden, 169 N.J. at 79.

In certain settings, insurance brokers have been held to have a limited duty to a third party who is not the insured, but who has nonetheless suffered harm by virtue of the broker's act or omission. In Rider, the defendant insurance broker had assured a driver with a learner's permit who was unable to obtain insurance on her own because she had no driver's license that he would secure insurance coverage for a car that her fiancé had obtained for her use. 42 N.J. at 471. However, the insurance did not cover her or her father, who also drove the car and was involved in a fatal accident. Id. at 474. We recognized that in those circumstances, the insurance broker's duty of due care extended to the injured third party. Id. at 482-83.

In Carter Lincoln-Mercury, we held that an insurance broker retained to secure insurance on a fleet of trucks for an insured owed a duty to "place the insurance with a financially stable carrier" not only to the insured but also to a loss-payee named in an endorsement. 135 N.J. at 185. Citing "considerations of fairness, including the broker's ability to prevent the harm," we observed that "[a] reasonable broker should foresee that the failure to inquire into the financial stability of a carrier with which the insurance is placed may result in the issuance of a policy by an insolvent or marginally solvent company that

25

may be unable to pay claims should they arise." Id. at 202-03. We noted that case law had "clearly recognize[d] that an insurance broker may owe a duty of care not only to the insured who pays the premium and with whom the broker contracts but to other parties found within the zone of harm emanating from the broker's actions as well." Id. at 202 (reviewing cases). We accordingly held that the broker's duty extended to loss-payees as "other claimants for whose protection the insurance was procured." Id. at 204.

"The duty of a broker or agent, however, is not unlimited." Id. at 190. A broker "is not responsible for failure to procure coverage when there is no evidence that the insured requested such coverage." Kenny & Lattal, § 10-12 at 321. Thus, in Wang v. Allstate Insurance Co., we declined to impose on insurance brokers a duty to advise insureds that the amount of their homeowners' insurance coverage, if not increased as the policies were renewed over the years, could become "inadequate to protect their assets from potential personal injury or property damage claims because of the appreciated value of their homes, inflationary trends in the area, and increased recoveries being awarded to tort victims." 125 N.J. 2, 16-17 (1991). Distinguishing that appeal from decisions premising a duty on "statutory and regulatory dictates" requiring insurance companies, brokers, and agents to provide certain information regarding coverage, we found "no comparable statutory duty to

26

notify or provide a buyer's guide or coverage selection form for a homeowner's policy." Id. at 18. Noting that "it is difficult to fix the limits of such a proposed duty," we declined to impose such a duty in the setting of that case. Id. at 19.

Our jurisprudence thus constrains the fiduciary duty of an insurance broker to the categories of insurance coverage that the broker undertakes to obtain for the insured, or the coverage necessitated by a particular peril known to the broker; we have not imposed a general duty on brokers to advise an insured about the myriad varieties of insurance available on the market. See Jenkins, 180 N.J. at 569; Sears Mortgage Corp., 134 N.J. at 348; Kenny & Lattal, § 10-2 at 321. In the unusual setting in which a broker is held to have a duty to a third party, that duty is premised on the broker's obligation to provide the insured with a type of coverage that the insured has requested, as well as considerations of foreseeability and fairness. See Carter Lincoln-Mercury, 135 N.J. at 202-03; Rider, 42 N.J. at 471.

D.

In this appeal, we determine whether an insurance broker charged to obtain workers' compensation insurance for an LLC had a duty to inform three LLC members, with whom he met to discuss the LLC's insurance needs, of the

27

availability of workers' compensation insurance and the right to opt for such coverage pursuant to N.J.S.A. 34:15-36.

Our threshold inquiry is whether the harm to the plaintiff was foreseeable. Coleman, 247 N.J. at 338; Jerkins, 191 N.J. at 294; Hopkins, 132 N.J. at 438. Here, it was foreseeable that if defendant did not inform Holmdel Nurseries' LLC members that the LLC could obtain workers' compensation coverage for Christopher Friedauer, his dependents could be harmed in the event that Christopher were to die in a work-related accident without such coverage. The threshold inquiry in our determination whether to impose a duty is thus satisfied, and we next consider the fairness and policy considerations identified in Hopkins and its progeny.

The first such consideration is the relationship of the parties. Coleman, 247 N.J. at 338; Hopkins, 132 N.J. at 439. Defendant had served for more than a decade as the insurance broker to Holmdel Nurseries, charged by Holmdel Nurseries to secure workers' compensation policies every year.[3] By virtue of

---

[3] The trial court found that defendant's status as Christopher Friedauer's insurance broker for purposes of securing insurance on his home, personal vehicle, and boat did not give rise to a special relationship warranting the imposition of a higher standard of care. See generally Wang, 125 N.J. at 15 (discussing the requirements for a special relationship in the insurance broker setting); Sobotor v. Prudential Prop. & Cas. Ins. Co., 200 N.J. Super. 333, 338-39 (App. Div. 1984) (same); Kenny & Lattal, § 10:9-2 at 319-20 (same). The Appellate Division did not rely on a special relationship between defendant and Christopher Friedauer when it recognized an insurance broker's duty to

that role, he had a statutory obligation to ensure that the LLC received the mandated notice. Christopher Friedauer, a new member of the LLC, was in the category of individuals whom the Legislature intended to protect when it amended N.J.S.A. 34:15-36. Moreover, Michael Friedauer testified that he told defendant that the LLC members wanted to be "protected" by insurance. Given Holmdel Nurseries' charge to defendant to obtain workers' compensation coverage, and defendant's obligation to comply with N.J.S.A. 34:15-36's express notice requirements, the relationship of the parties favors the imposition of a duty in this case.

The second factor in the inquiry is the nature of the risk. Coleman, 247 N.J. at 338; Hopkins, 132 N.J. at 439. Here, the risk imposed on Christopher Friedauer and his dependents was significant. Plaintiff presented testimony that Holmdel Nurseries and its LLC members depended on defendant to advise them regarding insurance, including workers' compensation insurance. As the

---

inform the individual members of an LLC of the availability of workers' compensation insurance coverage and the requirement that the LLC elect such coverage. Defendant's petition for certification did not raise the question of whether defendant had a special relationship with Christopher Friedauer warranting a heightened standard of care, and plaintiff filed no cross-petition addressing that question. We therefore decline to consider in this appeal whether the record supports a finding of a special relationship between defendant and Christopher Friedauer warranting the imposition of a duty on defendant independent of his duty as the insurance broker for Holmdel Nurseries.

trial record reflects, Christopher Friedauer conducted potentially dangerous tasks in his job at Holmdel Nurseries, thus raising the specter that he would suffer a serious work-related accident without workers' compensation coverage. The second factor thus supports the imposition of a duty.

The third factor in the inquiry is the opportunity and ability to exercise care. Coleman, 247 N.J. at 338; Hopkins, 132 N.J. at 439. Defendant, a seasoned insurance broker specializing in insurance for the agricultural sector, had both the opportunity and the ability to communicate to Holmdel Nurseries' LLC members the availability of workers' compensation coverage and the requirements to obtain such coverage. The LLC at issue here had only three members in July 2012, when defendant met with the LLC to discuss insurance issues. Defendant was acquainted with all three LLC members and served as their personal insurance broker with respect to several categories of insurance. He frequently communicated by telephone with the LLC members regarding Holmdel Nurseries' insurance coverage. Defendant had the opportunity and ability to provide the notice; had he done so, the LLC could have decided whether to secure or decline the coverage. The third factor in the analysis thus favors the imposition of a duty.

The fourth and final factor is the public interest in the proposed solution. Coleman, 247 N.J. at 338; Hopkins, 132 N.J. at 439. N.J.S.A. 34:15-36

30

reflects a legislative determination that the notice contemplated in the statute is in the public interest. See Sponsor's Statement to A. 1647 (L. 1999, c. 383); A. Labor Comm. Statement to A. 1647 1 (Feb. 11, 1999); Governor's Veto Statement to A. 1647 2 (1999). By making workers' compensation coverage available to LLC members and certain other business owners who actively perform services on behalf of the entity, and mandating notice regarding such coverage, the Legislature sought to reduce the risk that an LLC member or other owner would be uninsured for a work-related injury or death. See N.J.S.A. 34:15-36. We view the public interest to be served by the imposition of a duty to provide that notice on an insurance broker charged to secure workers' compensation coverage for an LLC, and we therefore consider that factor to favor the recognition of such a duty.

In accordance with N.J.S.A. 34:15-36, we hold that an insurance broker for an LLC, charged by the LLC to obtain workers' compensation coverage on its behalf, has a non-waivable duty to provide notice that such coverage is available to LLC members who actively perform services on behalf of the LLC -- but that such coverage is available only if the LLC elects the coverage when the policy is purchased or renewed. Because it is foreseeable that the failure to provide such notice may harm an LLC member or the member's dependents, the broker's duty may extend not only to the LLC, but also to LLC members

31

eligible for workers' compensation coverage under N.J.S.A. 34:15-36. In the circumstances here, in which the LLC had only three members -- all working at Holmdel Nurseries and all in contact with defendant during the relevant period -- defendant had a duty to provide notice directly to the members. We do not address whether an insurance broker must provide direct notice to all LLC members eligible for workers' compensation coverage in cases involving LLCs with numerous members; in such settings, notice to the LLC's managing member or other designated officer may satisfy the broker's duty.[4]

As it informs our determination that defendant had a duty, N.J.S.A. 34:15-36 also defines the standard governing an action for breach of that duty. The statute precludes imposition of liability on an insurance broker absent proof of "a willful, wanton or grossly negligent act of commission or omission." See N.J.S.A. 34:15-36. That standard should govern any common-law claim based on a failure to provide the notice mandated by the statute. In this case, and in other cases premised on an alleged breach of an insurance broker's duty to provide notice of the availability of workers' compensation insurance for LLC members, a plaintiff must prove that the damage was caused

---

[4] The Department of Banking and Insurance may decide to adopt regulations providing specific guidance to insurers and insurance producers regarding the notice required by N.J.S.A. 34:15-36.

by a willful, wanton, or grossly negligent act of commission or omission by the broker. Ibid.

Because the trial court's grant of defendant's motions pursuant to Rules 4:37-2(b) and 4:40-1 was based primarily on its conclusion that defendant owed no duty to the LLC members, we concur with the Appellate Division that the court erred when it granted the motions.

E.

We briefly address the trial court's ruling on the question of proximate cause.

A plaintiff seeking to recover for a breach of duty must prove that the defendant's act was "a proximate cause of the loss." Harbor Commuter Serv., Inc. v. Frenkel & Co., 401 N.J. Super. 354, 368 (App. Div. 2008). To meet that standard, plaintiff must demonstrate that defendant's conduct "may be considered a substantial factor contributing to the loss." Conklin v. Hannoch Weisman, 145 N.J. 395, 419 (1996); see also Aden, 169 N.J. at 73-74 (noting that the trial court applied the substantial factor test to the question of proximate cause in an insurance broker negligence case).

At trial, plaintiff addressed two causation issues. First, plaintiff asserted that if Holmdel Nurseries' LLC members had been informed that workers' compensation coverage was available to them, the LLC members would have

elected to purchase that coverage. When it granted defendant's motions, the trial court ruled that there was no evidence that Robert and Michael Friedauer had the authority to bind Holmdel Nurseries to purchase that coverage without Christopher Friedauer's approval, and no evidence that Christopher would have agreed that the LLC should pay the premium for such coverage.

Applying the test of <u>Rule</u> 4:37-2(b) and <u>Rule</u> 4:40-1, we disagree with the trial court's assessment of the evidence. Accepting the testimony of Robert and Michael Friedauer as true for purposes of the motion and according to that evidence all reasonable inferences, see <u>Smith</u>, 225 N.J. at 397, a rational juror could conclude that all three LLC members -- all part of the same family -- wanted to maximize insurance coverage for Christopher Friedauer, a parent of young children whose work for Holmdel Nurseries was sometimes dangerous. Although the jury may have been persuaded by defendant's testimony that the LLC would have opted against such coverage given its longstanding decision to decline it, we cannot conclude that no rational juror would decide in plaintiff's favor on that issue.

Second, plaintiff argues that if Christopher Friedauer had been covered by workers' compensation insurance, a workers' compensation judge would

have ruled that his death was work-related and would have awarded his dependents a death benefit pursuant to N.J.S.A. 34:15-13.[5]

In order to award a death benefit to Christopher Friedauer's dependents, a workers' compensation court would have to find that his death resulted from an "accident arising out of and in the course of his employment." N.J.S.A. 34:15-1; see also N.J.S.A. 34:15-13(a) (prescribing the rate for computing the death benefit); N.J.S.A. 34:15-13(f) (defining dependents eligible for a death benefit). In that inquiry, "a successful petitioner in workers' compensation generally must prove both legal and medical causation when those issues are contested." Lindquist v. City of Jersey City Fire Dep't, 175 N.J. 244, 259

---

[5] As we noted in the setting of a legal malpractice action in which the plaintiff seeks to prove the value of a claim lost by virtue of an attorney's malpractice, "[t]he most common way to prove the harm inflicted by such malpractice is to proceed by way of a 'suit within a suit' in which a plaintiff presents the evidence that would have been submitted at a trial had no malpractice occurred." Garcia v. Kozlov, Seaton, Romanini & Brooks, P.C., 179 N.J. 343, 358 (2004); see also Frazier v. N.J. Mfrs. Ins. Co., 142 N.J. 590, 601 (1995) (noting that when a plaintiff seeks to recover against an attorney for failing to file a timely action against a tortfeasor, "[t]he measure of damages is ordinarily the amount that the client would have received but for his attorney's negligence," which is "generally shown by introducing evidence establishing the viability and worth of the claim that was irredeemably lost" (quoting Gautam v. De Luca, 215 N.J. Super. 388, 397 (App. Div. 1987))). In the insurance context, "[t]he damages which may be recovered for breach of an agreement to furnish an insurance policy is the loss sustained by reason of the breach, [namely] 'the amount that would have been due under the policy provided it had been obtained.'" Robinson v. Janay, 105 N.J. Super. 585, 591 (App. Div. 1969) (quoting 43 Am. Jur. 2d, Insurance, § 174 (1982)).

(2003). "[P]roof of medical causation means proof that the disability was actually caused by the work-related event. Proof of legal causation means proof that the injury is work connected." Ibid. (citation omitted). "It must be established that the work was at least a contributing cause of the injury and that the risk of the occurrence was reasonably incident to the employment." Coleman v. Cycle Transformer Corp., 105 N.J. 285, 290 (1986). That may be demonstrated, however, "by circumstantial evidence; direct evidence is not necessary." Verge v. County of Morris, 272 N.J. Super. 118, 125 (App. Div. 1994).

In the procedural posture of this appeal, in which there was no workers' compensation proceeding, we express no view as to what evidence a workers' compensation judge would have required in order to rule that Christopher Friedauer's death resulted from an "accident arising out of and in the course of his employment" under N.J.S.A. 34:15-1. We note only that we disagree with the trial court's conclusion that plaintiff presented no evidence that Christopher Friedauer died in a work-related accident and that it therefore did not need to reach the question of proximate cause. Michael Friedauer testified that Christopher Friedauer fell on Holmdel Nurseries' property while attempting to start a truck owned by the business in order to conduct snowplowing work; that Christopher hit his head so hard in that fall that, in his

36

words, he "saw stars"; that, following the fall, Christopher "didn't look like himself" and was "completely out of it"; and that Michael Friedauer found Christopher dead in the truck later the same day. The trial court should have reached the issue whether plaintiff's proofs on the question of proximate cause concerning Christopher Friedauer's injury were sufficient to warrant denial of defendant's motions for involuntary dismissal and for judgment at trial.

F.

Because it recognized no duty on the part of an insurance broker to an LLC member to provide notice of the availability of workers' compensation coverage, the trial court did not consider whether the evidence supported a finding that defendant "cause[d] damage by a willful, wanton or grossly negligent act of commission or omission" under N.J.S.A. 34:15-36.

Accordingly, we remand this matter to the trial court for a determination of plaintiff's claims under the "willful, wanton or grossly negligent" standard of N.J.S.A. 34:15-36. We do not preclude either party from filing a motion for summary judgment pursuant to Rule 4:46-2 in the trial court on remand. If neither party files a summary judgment motion, or if summary judgment is denied, the matter should be retried.

IV.

We affirm as modified the judgment of the Appellate Division and remand this matter to the trial court for further proceedings in accordance with this opinion.


CHIEF JUSTICE RABNER; JUSTICES SOLOMON, PIERRE-LOUIS and FASCIALE; and JUDGE SABATINO (temporarily assigned) join in JUSTICE PATTERSON's opinion.